UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CITY OF TAMPA, ex rel.
Melanie Grenier,

      Plaintiff,

v.                                CASE NO.:

MID-AMERICA APARTMENT
COMMUNITIES, INC., a Foreign
For Profit Corporation;
and
MID-AMERICA APARTMENTS, LTD.
a Foreign Limited Partnership,

      Defendants.
_____/

## COMPLAINT

The CITY OF TAMPA, ex rel. Melanie Grenier, for its complaint against

MID-AMERICA APARTMENT COMMUNITIES, INC., a Foreign

For Profit Corporation; and MID-AMERICA APARTMENTS, LTD., a Foreign

Limited Partnership, alleges as follows:

## NATURE OF THE ACTION

1.     The City of Tampa, ex. rel. Melanie Grenier, brings this action to enforce

the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C.

§ 3601 *et seq*., the Florida Fair Housing Act and § 12-71 *et. seq*., Tampa Code of

Ordinances.

1

#WAIFV5HV0D2NWDv5

2.      The City of Tampa brings this action for monetary damages, injunctive relief, and other statutory relief pursuant to 42 U.S.C. § 3612(o), and § 12-113, Tampa Code of Ordinances, on behalf of Melanie Grenier.

3.      The City of Tampa alleges that the Defendants discriminated in the rental of a dwelling and in the terms and conditions of tenancy based on tenant's disability by refusing to make reasonable accommodations in rules, policies, practices or services when such accommodations were necessary to afford a person equal opportunity to enjoy a dwelling, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(2), (f)(3)(B), and § 12-82 Tampa Code of Ordinances.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to § 28 U.S.C. 1331, 1345, and § 42 U.S.C. 3612(o).

5.      This Court has supplemental jurisdiction pursuant to § 28 U.S.C. 1367 to hear and determine Plaintiff's state law claims herein because the claims are so related to claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the actions or omissions giving rise to the claims occurred in this District and because a substantial part of the events or omissions giving rise to the claim occurred in the District and a substantial part of property that is the subject of the action is situated in this District.

#WAIFV5HV0D2NWDv5

## PARTIES

7.     Plaintiff, CITY OF TAMPA, ("Plaintiff" or the "City") is a local government entity authorized to enforce Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601 *et. seq.*, The Florida Fair Housing Act, § 760.20 *et. seq.*, and its own laws, including the City of Tampa Human Rights Ordinance, Tampa Code of Ordinances, Chapter 12, Article IV, § 12-71 *et seq.*

8.     MELANIE GRENIER ("Plaintiff" or "Ms. Grenier") is a natural person. At all times material hereto, Ms. Grenier has resided in Hillsborough County, Florida. At all times material hereto, Ms. Grenier qualified as a person with a disability as defined by the Fair Housing Act, 42 U.S.C. § 3602(h), and §12-72 Tampa Code of Ordinances.

9.     Defendant, MID-AMERICA APARTMENT COMMUNITIES, INC., ("MAA") is a For Profit Tennessee Corporation with a principal address in Germantown, Tennessee. MAA is an active and current corporate entity which operates in Florida and is subject to the laws of Florida. MAA conducted extensive business activities in Tampa, Hillsborough County, Florida, including but not limited to the ownership, management and operation of the apartment rental units located at MAA Harbour Island, 800 Harbour Post Drive, Tampa, Florida 33602. MAA is the publicly traded parent company and sole general partner of Mid-America Apartments, L.P. (MAALP), which is the primary operating entity that holds the real estate assets.

3

10.     Defendant, MID-AMERICA APARTMENTS, LTD. (MAALP), is a Foreign Limited Partnership and was at all times material hereto the primary operating entity holding the real estate assets of MAA and has and had authority, either actual or implied, to bind MAA.

11.      At all times material hereto MAA owned and MAALP managed and operated the apartment rental units located at MAA Harbour Island, 800 Harbour Post Drive, Tampa, Florida 33602 (the "Subject Property"), a "dwelling" as defined by the Fair Housing Act, 42 U.S.C. § 3602(b), and §12-72 Tampa Code of Ordinances, that is not exempt under either the Fair Housing Act, Florida Fair Housing Act or the City of Tampa Human Rights Ordinance, Tampa Code of Ordinances.

## FACTUAL ALLEGATIONS

12.     On or about July 21, 2023, Ms. Grenier entered into a one-year lease agreement for Unit 1457 at the Subject Property lasting through August 20, 2024, for the rental of the Subject Property as her dwelling.

13.     Ms. Grenier stated in her rental application to lease the Subject Property that she had a service animal.

14.     Ms. Grenier identifies as a person with a disability and has been diagnosed with several mental health disabilities.

15.     Ms. Grenier has been seeing a psychiatrist Dr. Sheela Bhattacharyya, M.D., since July of 2022 who has diagnosed her with the following mental health conditions: depressive disorder and bi-polar disorder.

16.    On or about February 19, 2024, Defendants found pet pads outside of Ms. Grenier's apartment and requested that Ms. Grenier complete an Assistance Animal Accommodation Request.

17.    On or about February 19, 2024, Ms. Grenier reminded Defendants that she had a disability and she would complete the Assistance Animal Accommodation Request.

18.    On or about February 20, 2024, Ms. Grenier informed Defendants that she was obtaining Emotional Support Animal ("ESA") certifications for her dogs and that she would provide the certification to Defendants upon receipt.

19.    On or about February 20, 2024, Defendants informed Ms. Grenier that she was required to provide proof of her disability from a licensed mental health care provider.

20.    On or about February 21, 2024, after doing research on established mental health care providers available to conduct an evaluation of her mental condition Ms. Grenier attended an appointment with a licensed telehealth mental health care practitioner, Dr. Paul Meyer ("Dr. Meyer"), for a mental health examination to verify the existence of her previously diagnosed mental health conditions.

21.    On or about February 21, 2024, Ms. Grenier attended her appointment with Dr. Meyer at the conclusion of which Dr. Meyer confirmed the diagnosis that Ms. Grenier suffered from depressive disorder and generalized anxiety disorder and

5

approved the use of two dogs as Emotional Support Animals to mitigate the symptoms of her diagnosed disability.

22.    On or about February 22, 2024, Ms. Grenier provided Defendants her completed Assistance Animal Accommodation Request which included a letter from Dr. Meyer diagnosing Ms. Grenier and a statement that in his professional opinion based on a consultation and evaluation of Ms. Grenier, her ESA's helped reduce her anxiety and depressive symptoms.

23.    Dr. Meyer has also acknowledged that he provides Ms. Grenier with ongoing psychotherapy on an as needed basis with therapeutic services for purposes other than verifying the need for an ESA.

24.    In addition to previously diagnosed conditions, Dr. Meyer determined that Ms. Grenier suffered from panic, insomnia, isolation, and mood changes.

25.    On or about February 26, 2024, Ms. Grenier provided Defendants a pet rent fee and monthly pet rent waiver form which included her most recent therapeutic session with Dr. Meyer.

26.    Ms. Grenier included a statement in the monthly pet rent waiver form that she had previously used other mental health practitioners to address her health conditions in addition to Dr. Meyer.

27.    On or about February 27, 2024, an MAA Assistance Animal Facilitator provided Ms. Grenier with a letter notifying her that her request for assistance with animals was denied due to lack of credible documentation.

6

28.　　Ms. Grenier was informed that the legal department made this determination.

29.　　Ms. Grenier attempted to discuss the reason for her denial with both the legal department and property management staff but received no interactive response from either the Apartment management staff or legal department.

30.　　The requested accommodation is necessary to afford Ms. Grenier an equal opportunity to use and enjoy her tenancy at the Subject Property.

31.　　By imposing the aforesaid conditions upon Ms. Grenier's rental of the dwelling, Defendants denied Ms. Grenier's request for reasonable accommodation.

32.　　Ms. Grenier's request for reasonable accommodation was denied in reckless disregard of, and complete indifference for, Ms. Grenier's medical condition and rights both granted and protected by the Fair Housing Act and City of Tampa Human Rights Ordinance.

33.　　Defendants did not extend Ms. Grenier's lease.

34.　　As a result of Defendants' unlawful denials of Ms. Grenier's request for reasonable accommodation, Ms. Grenier is currently houseless living in a nontraditional setting.

35.　　As a result of Defendants' unlawful denials of Ms. Grenier's request for reasonable accommodation, Ms. Grenier suffered damages.

36.　　Ms. Grenier filed a complaint to the United States Department of Housing and Urban Development ("HUD").

37.    HUD referred the complaint to the Tampa Office of Human Rights ("TOHR") which serves as a federally qualified equivalent program authorized to act on behalf of HUD.

38.    Through the TOHR, the City provides the public with the opportunity to file discrimination complaints in the areas of employment, housing, and public accommodations on behalf of both HUD and the United States Equal Employment Opportunity Commission.

39.    The TOHR coordinates educational outreach activities in an effort to inform the public, housing providers, nonprofit agencies, and business owners about human rights issues. The TOHR makes available workshop presenters to speak on topics including, but not limited to, fair housing (*i.e.*, reasonable accommodations, modifications, use of criminal records, *etc.*).

40.    During the course of investigation Defendants failed to respond to the TOHR Investigator's multiple requests for information.

41.    The TOHR has been, and continues to be, adversely affected by the discriminatory acts, policies, and practices of the Defendants.

42.    In this instance, the TOHR reviewed Ms. Grenier's complaint, made a thorough investigation of the complaint, and determined that "Reasonable Cause" existed to believe that Defendants engaged in unlawful and discriminatory housing practices in violation of the Fair Housing Act and City of Tampa Human Rights Ordinance.

8

43.     As a direct and proximate result of Defendants' refusal to accommodate Ms. Grenier, she has suffered irreparable loss and injury including but not limited to loss of housing opportunities, actual damages, humiliation, emotional distress, and deprivation of her right to equal housing opportunities regardless of disability.

44.     As a direct and proximate result of Defendants' refusal to accommodate TOHR has suffered damages for expenditure of its scarce resources which have been diverted and mission frustrated to address the allegations outlined in this Complaint including the expenditure of resources which should have been used to affirmatively further fair housing without the cost of litigation.

45.     Consistent with the foregoing, Plaintiff seeks actual and consequential damages, jointly and severally, against Defendants, for Defendants' discriminatory actions against Ms. Grenier by virtue of their refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Ms. Grenier an equal opportunity to use and enjoy her tenancy at the Subject Property and resultant unnecessary costs to TOHR for the aforesaid having caused the actual damages to Ms. Grenier alleged below.

46.     Plaintiff has complied with all necessary conditions precedent to the bringing of this action, or such conditions precedent have been waived.

## **PROCEDURAL BACKGROUND**

47.     On or about February 28, 2024, Ms. Grenier filed a complaint with HUD receiving the following case number: HUD 04-24-6766-8.

48.     On or about March 11, 2024, TOHR received a referral from HUD on HUD 04-24-6766-8 generating the following TOHR case number: TOHR No. 24-0021.

49.     As required by the Fair Housing Act, 42 U.S.C. § 3610(a) and (b), and § 12-111 Tampa Code, the City administrator ("administrator"), conducted an investigation of the complaint made by Ms. Grenier, attempted to conciliate the matters at issue, and prepared a final investigative report.

50.     Based on the information gathered by the TOHR investigation, the administrator pursuant to 42 U.S.C. § 3610(g) and §12-111 Tampa Code of Ordinances determined that reasonable cause existed to believe that illegal discriminatory housing practices by Defendants occurred.

51.     On January 13, 2025, the administrator issued a Notice of Determination of Reasonable Cause.

52.     This determination was reviewed and upheld by the City of Tampa Human Rights Board on May 14, 2025.

53.     On July 17, 2025, the administrator issued an Administrative Charge finding that Defendants had committed a discriminatory housing practice under Title VIII of the Civil Rights Act of 1968, as amended, the Fair Housing Act, and Chapter 12 of the City of Tampa Human Rights Ordinance.

#WAIFV5HV0D2NWDv5

54.    Ms. Grenier elected to have the claims asserted in the Administrative Charge resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a) and §12-112(a) Tampa Code.

### COUNT I – VIOLATION OF THE FAIR HOUSING ACT
**(Failure to Provide Reasonable Accommodation)**

55.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

56.    In accordance with the Fair Housing Act, it is an unlawful discriminatory practice for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. §3604(f)(3)(B).

57.    At all times material hereto, Defendants had actual knowledge of Ms. Grenier's disability.

58.    Ms. Grenier advised Defendants of her disability and diagnosed need for an ESA to ameliorate difficulties related to her disability.

59.    Ms. Grenier subsequently acquired two dogs as ESA's to address her diagnosed disabilities.

60.    Ms. Grenier requested a reasonable accommodation of the pets and pet deposits policies of Defendants.

61.    Defendants were aware of the use and purpose of the ESA's after being advised by Ms. Grenier.

62.    The ESA's were necessary for the equal use and enjoyment of Ms. Grenier's dwelling and her use and enjoyment of common and public areas of housing.

63.    Defendants refused to allow a reasonable accommodation which was necessary and required due to Ms. Grenier's disability.

64.    Defendant's failure to modify its existing policies to accommodate the disabilities of Ms. Grenier is discriminatory and unlawful.

65.    Defendant's enforcement of policies that denied reasonable accommodation of Ms. Grenier's disability is discriminatory and unlawful.

66.    Defendants enforced a policy that conditioned the rental of a dwelling on Ms. Grenier's acceptance of a denial of a reasonable accommodation.

67.    There was no accommodation requested by Ms. Grenier that would be an undue financial and administrative burden to Defendants, which would be a direct threat to any person, or which would be a fundamental alteration in the nature of the programs or policies of the Subject Property.

68.    Defendants were personally involved in, authorized, and ratified each and every discriminatory act and denial of accommodation for Ms. Grenier alleged herein.

69.    Further, as a direct and proximate result of Defendants' refusal to accommodate Ms. Grenier, she has suffered irreparable loss and injury including but not limited to loss of housing opportunities, actual damages, humiliation, emotional

distress, and deprivation of her right to equal housing opportunities regardless of disability.

## COUNT II – VIOLATION OF THE FAIR HOUSING ACT
### (Failure to Provide Reasonable Accommodation Through Adverse Terms and Conditions)

70.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

71.    In accordance with the Fair Housing Act, it is an unlawful discriminatory practice for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. §§ 3604(f)(2).

72.    At all times material hereto, Defendants had actual knowledge of Ms. Grenier's disability.

73.    Ms. Grenier advised Defendants of her disability and diagnosed need for an ESA to ameliorate difficulties related to her disability.

74.    Ms. Grenier subsequently acquired two dogs as ESA's to address her diagnosed disabilities.

75.    Ms. Grenier requested a reasonable accommodation of the pet and pet deposits policies of Defendants.

76.    Defendants were aware of the use and purpose of the ESA's after being advised by Ms. Grenier.

13

77.    Allowing the use of the ESA's was necessary for the equal use and enjoyment of Ms. Grenier's dwelling and her use and enjoyment of common and public areas of housing.

78.    Defendants refused to allow a reasonable accommodation which was necessary and required due to Ms. Grenier's disability.

79.    Defendant's failure to modify its existing policies to accommodate the disabilities of Ms. Grenier is discriminatory and unlawful.

80.    Defendant's enforcement of policies that denied reasonable accommodation of Ms. Grenier's disability is discriminatory and unlawful.

81.    Defendants enforced a policy that conditioned the rental of a dwelling on Ms. Grenier's acceptance of a denial of a reasonable accommodation.

82.    There was no accommodation requested on behalf of Ms. Grenier that would be an undue financial and administrative burden to Defendants, which would be a direct threat to any person, or which would be a fundamental alteration in the nature of the programs of the Subject Property.

83.    Defendants were personally involved in, authorized, and ratified each and every discriminatory act and denial of accommodation for Ms. Grenier alleged herein.

84.    Further, as a direct and proximate result of Defendants' refusal to accommodate Ms. Grenier, she has suffered irreparable loss and injury including but not limited to loss of housing opportunities, actual damages, humiliation, emotional

14

distress, and deprivation of her right to equal housing opportunities regardless of disability.

## COUNT III – VIOLATION OF THE CITY OF TAMPA CODE OF ORDINANCES
### (Failure to Provide Reasonable Accommodation)

85.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

86.    In accordance with the Tampa Human Rights Ordinance, it is an unlawful discriminatory practice for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. § 12-82, Tampa Code of Ordinances.

87.    At all times material hereto, Defendants had actual knowledge of Ms. Grenier's disability.

88.    Ms. Grenier advised Defendants of her disability and use of an ESA to ameliorate difficulties related to her disability.

89.    Ms. Grenier subsequently acquired two dogs as ESA's to address her diagnosed disabilities.

90.    Ms. Grenier requested a reasonable accommodation of the pet and pet deposits policies of Defendants.

91.    Defendants were aware of the use and purpose of the ESA's after being advised by Ms. Grenier.

92.    Such ESA's were necessary for the equal use and enjoyment of Ms. Grenier's dwelling and her use and enjoyment of common and public areas of housing.

93.    Defendants refused to allow a reasonable accommodation which was necessary and required due to Ms. Grenier's disability.

94.    Defendant's failure to modify its existing policies to accommodate the disabilities of Ms. Grenier is discriminatory and unlawful.

95.    Defendant's enforcement of policies that denied reasonable accommodation of Ms. Grenier's disability is discriminatory and unlawful.

96.    Defendants enforced a policy that conditioned the rental of a dwelling on Ms. Grenier's acceptance of a denial of a reasonable accommodation.

97.    There was no accommodation requested on behalf of Ms. Grenier that would be an undue financial and administrative burden to Defendants, which would be a direct threat to any person, or which would be a fundamental alteration in the nature of the programs of the Subject Property.

98.    Defendants were personally involved in, authorized, and ratified each and every discriminatory act and denial of accommodation for Ms. Grenier alleged herein.

99.    Further, as a direct and proximate result of Defendants' refusal to accommodate Ms. Grenier, she has suffered irreparable loss and injury including but not limited to loss of housing opportunities, actual damages, humiliation, emotional

distress, and deprivation of her right to equal housing opportunities regardless of disability.

## COUNT IV – VIOLATION OF CITY OF TAMPA CODE OF ORDINANCES
### (Failure to Provide Reasonable Accommodation
### Through Adverse Terms and Conditions)

100.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

101.    In accordance with the Tampa Human Rights Ordinance, it is an unlawful discriminatory practice for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. § 12-82, Tampa Code of Ordinances.

102.    At all times material hereto, Defendants had actual knowledge of Ms. Grenier's disability.

103.    Ms. Grenier advised Defendants of her disability and her use of an ESA to ameliorate difficulties related to her disability.

104.    Ms. Grenier subsequently acquired two dogs as ESA's to address her diagnosed disabilities.

105.    Ms. Grenier requested a reasonable accommodation of the pet and pet deposits policies of Defendant.

106.    Defendants were aware of the use and purpose of the ESA's after being advised by Ms. Grenier.

17

107.    Allowing the use of the ESA's was necessary for the equal use and enjoyment of Ms. Grenier's dwelling and her use and enjoyment of common and public areas of housing.

108.    Defendants refused to allow a reasonable accommodation which was necessary and required due to Ms. Grenier's disability.

109.    Defendant's failure to modify its existing policies to accommodate the disabilities of Ms. Grenier is discriminatory and unlawful.

110.    Defendant's enforcement of policies that denied reasonable accommodation of Ms. Grenier's disability is discriminatory and unlawful.

111.    Defendants enforced a policy that conditioned the rental of a dwelling on Ms. Grenier's acceptance of a denial of a reasonable accommodation.

112.    There was no accommodation requested on behalf of Ms. Grenier that would be an undue financial and administrative burden to Defendants, which would be a direct threat to any person, or which would be a fundamental alteration in the nature of the programs of the dwelling.

113.    Defendants were personally involved in, authorized, and ratified each and every discriminatory act and denial of accommodation for Ms. Grenier alleged herein.

114.    Further, as a direct and proximate result of Defendants' refusal to accommodate Ms. Grenier, she has suffered irreparable loss and injury including but not limited to loss of housing opportunities, actual damages, humiliation, emotional

distress, and deprivation of her right to equal housing opportunities regardless of disability.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands jury trial of all issues triable of right by jury.

## REQUEST FOR RELIEF

WHEREFORE, the City of Tampa on its own behalf and that of Melanie Grenier and the HUD, requests that this Court:

1. Declare that Defendant's discriminatory housing practices as set forth above violate the Fair Housing Act;

2. Declare that the actions of Defendant were discriminatory and in violation of Chapter 12 of the Tampa Code of Ordinances.

3. Enjoin and restrain Defendants, their officers, employees, agents, successors, and all other persons or corporations in active concert or participation with Defendants, from:

   a. Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2), and § 12-82(2) Tampa Code of Ordinances; and

   b. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to

19

#WAIFV5HV0D2NWDv5

afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B), and § 12-82(3) Tampa Code of Ordinances.

4. Order Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or residents are discriminated against because of disability;

5. Award monetary damages to Complainant pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), § 12-112(b) Tampa Code of Ordinances, and § 12-113(b) Tampa Code of Ordinances; and

6. Order such additional relief as the interests of justice require.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of October 2025, I electronically filed the foregoing with the United States Court for the Middle District of Florida e-filing portal with electronic notice to all parties and pro se litigants.

Respectfully submitted,

**OFFICE OF THE CITY ATTORNEY, CITY OF TAMPA, FLORIDA**

By:____/s/ Carl Brody_____
  **CARL BRODY**
  Assistant City Attorney
  FBN: 0102229
  315 E. Kennedy Boulevard, 6th Floor

20

Tampa, FL  33602
Carl.Brody@tampagov.net
Secondary:  Kimber.Spitsberg@tampagov.net
(813) 274-8842; (813) 274-8894 Fax
Counsel for Plaintiff, City of Tampa


By:___/s/ Megan Birnholz-Couture_____
     **MEGAN BIRNHOLZ-COUTURE**
     Assistant City Attorney
     FBN:  1049166
     315 E. Kennedy Boulevard, 6th Floor
     Tampa, FL  33602
     Megan.Birnholz-Couture@tampagov.net
     Secondary:  Kimber.Spitsberg@tampagov.net
     (813) 274-8842; (813) 274-8894 Fax
     Counsel for Plaintiff, City of Tampa